THE PEOPLE, *ex rel.* E. Ordronaux, *vs.* F. CHEGARAY and C. CONDERT.

The *father* is entitled to the custody of his infant children, and where differences exist between the parents, the right of the *father* is preferred to that of the *mother*; but he may forfeit it by misconduct, may be controlled in the exercise of his parental power, and under certain circumstances the care and custody of the children may be committed to the mother.

Where a *habeas corpus* is sued out on the application of a *mother* in respect to the care and custody of her *minor children*, on the coming in of the return, *denials of material facts set forth in the return*, and new allegations in support of the application, will be received, provided the same be made under oath; but in such case the *father* will be allowed to give further evidence on his part.

Whether the *affidavit* of the *wife* can properly be received when its effect is to give testimony against the *husband*, QUERE. The affidavit of the *wife* was received in [638] this case, it being deemed not material as to the main question before the court.

In cases of this kind, in the exercise of its discretion, the wishes of the children will be consulted by the court.

HABEAS CORPUS, in a case of *minor children*, on the question of their custody, as between their parents. On the 8th of August, 1836, Elizabeth Ordronaux, the wife of John Ordronaux, of the city of New-York, presented a petition to the court, verified by her oath, stating that she was an inhabitant of this state, and that she and her husband were living in a state of separation without being divorced; that there were three minor children of the marriage, to wit, Clare, aged 15 years, Florine, aged 13 years, and John, aged 9 years; that her husband, in April, 1835, placed the two daughters in the boarding-school of Madame Chegaray, the wife of the defendant Chegaray, in the city of New-York, where they still remain; and that the son was placed in the boarding-school kept by the defendant Condert, who is the principal of the New-York *Lyceum*, where he still remains. She complained that the children had not been permitted to visit her, except on a few occasions, and set forth various other matters in support of an application for writs of *habeas corpus* to have the children brought into court, and that the court would award the care and custody of them to her.(*a*) Writs were awarded and issued, one directed to the defendant Chegaray, to bring up the two daughters, and the other to the defendant Condert to bring up the son. The writs recited the application of the mother, made in pursuance of the statute, and were made returnable at the special term in September. A [639] copy of the petition was served with the writ on each of the defendants.

On the return day the children were brought into court, and the defendants severally made return to the writ of *habeas corpus*, which was verified by his oath. An affidavit of the husband, John Ordronaux, and several other affidavits, were read in answer to the facts stated in the petition, and for the purpose of showing that the charge and custody of the children ought to continue with the father.

*J. Greenwood* appeared for the defendants and the father of the children.

*A. Tabor & N. Chase*, appeared for the mother.

The counsel for the relator proposed to read affidavits denying some of the facts stated in the return, and in answer to the affidavits which had been read on the part of the father. Among others they proposed to read an affidavit made by Mrs. Ordronaux, who was then in court. The counsel for the defendants objected on several grounds: that the defendants had answered the petition which had been served with the writs, and could not be called upon to answer

(*a*) The Revised Statutes (2 *R. S.* 148, § 1, 3) provide as follows : Where any husband and wife shall live in a state of separation, without being divorced, and shall have any minor child of the marriage, the wife, if she be an inhabitant of this state, may apply to the supreme court for a *habeas corpus*, to have such minor child brought before it. (§ 1.) On the return of such writ, the court, on due consideration, may award the charge and custody of the child so brought before it to the mother, for such time, under such regulations and restrictions, and with such provisions and directions, as the case may require. (§ 2.) At any time after the making of such order, the supreme court may annul, vary, or modify the same. (§ 3.)

The People *v.* Chegaray.

new matter; that the case is not within 2 *R. S.* 569, § 48, and at the common law the return to a writ of *habeas corpus* could not be controverted. If the return was false, the remedy was by action on the case. (*Comyn's Dig. Habeas Corpus.* 6 *Greenl.* 462.) As to the affidavit of Mrs. Ordronaux, it was objected that she could not be a witness against her husband; it was against the policy of the law.

*By the Court,* BRONSON, J. The practice of the courts has not been entirely uniform on this subject; but independent of any statutory provision, I think it the better opinion that the return to a writ of *habeas corpus* could not be controverted. If the return was sufficient, and showed a good cause for taking and detaining, the court was bound to remand the prisoner, without inquiring whether the return was true or false. It is, however, unnecessary to pass upon that question. The act of 1818, (*Laws of* 1818, *p.* 298,) after reciting that doubts were entertained whether returns made to writs of *habeas corpus* were traversable or examinable by facts *dehors* the return, provided, that the officer before whom the party should be brought on *habeas corpus* should within three days after return made, proceed to examine into the facts contained in such return, and into the cause of the confinement or restraint, and thereupon either discharge, or bail, or remand the party, as the case should require. The substance of this act has been incorporated in the Revised Statutes, (2 *R. S.* 562, *art.* 2.) The 48th section provides, that " the party brought before any such court or officer on the return of any writ of *habeus corpus, may deny any of the material facts* set forth in the return, or allege any fact to show either that his imprisonment or detention is unlawful, or that he is entitled to his discharge; which allegations or denials shall be on oath ; and thereupon such court or officer shall proceed, in a summary way, to hear such allegations and proofs as may be produced in support of such imprisonment or detention, or against the same, and to dispose of such party as the justice of the case may require."

It is true that this section does not in terms extend to the case under consideration ; it relates particularly to persons committed, detained, confined, or restrained of their liberty. (§ 21.) But the 86th section declares, that " the several provisions contained in this title, shall be construed to apply, *so far as they may be applicable,* and except where otherwise provided, to every writ of *habeas corpus* authorized to be issued *by any statute of this state.*" It seems as appropriate in this case to hear the allegations and proofs of the parties in relation to the proper charge and custody of the children, as it would be on a complaint of unjust imprisonment to inquire into the grounds for the detention. There can be no substantial reason why the return should be more conclusive in the one case than in the other. If it be not obligatory upon the court to pursue that course on the present occasion, I think it safe to follow the provisions of the 48th section, so far as they can be made applicable to this case ; and I shall therefore proceed, in a summary way, to hear such allegations and proofs as may be produced in support of the respective claims of the father and the mother to the charge and custody of the children.

The proper course has thus far been pursued on the part of the applicant. A copy of her petition was served with the writs; and the father, and the persons having the immediate charge of the children under his authority, have had an opportunity to answer. It is true that they may now be surprised by the introduction of new matter; but this would not be a greater evil than that which might possibly result from holding the returns to be conclusive. In a summary proceeding, either party may suffer injury from not being able to anticipate all the allegations which may be made on the part of his adversary. But the court, as far as practicable, will take care that no improper advantage shall be obtained by either party. The proofs offered by the mother will be received, and the father will also be at liberty to give further evidence on his part. The affidavit of Mrs. Ordronaux will be received, subject to all legal exceptions.

The ·People *v.* Chegaray.

An affidavit of Mrs. Ordronaux, and several other affidavits, were then read in support of her application. No further proofs were offered on the part of the father, or the defendants.

The counsel for the relator insisted, among other things, that at the common law the father had no greater right than the mother to the custody of the children of the marriage. They urged also that the children should be examined by the court, for the purpose of ascertaining their wishes in relation to the matter in controversy. They cited 2 *Stra.* 982; 5 *Binn.* 520; 3 *Mass. R.* 482; 6 *Greenl.* 462; 8 *Johns. R.* 328; 4 *Johns. Ch. R.* 80; 13 *Johns. R.* 418; 10 *Vesey,* 52; 2 *Russ.* 1; 5 *Paige,* 596.

The counsel for the defendants cited 5 *East,* 220; 6 *Greenl.* 464.

*By the Court,* BRONSON, J. Since the adjournment of the court last eve- [642] ning, I have looked into the affidavit of Mrs. Ordronaux, with the other papers, and without intending to decide whether it be proper to receive the affidavit of the wife in such a case, I have taken it into consideration in forming my judgment upon the merits of this application. The affidavit of the wife was received by Lord Eldon, in *De Manneville* v. *De Manneville,* (10 *Vesey,* 52,) under circumstances somewhat similar to those of the present case; but in the final decision, the chancellor expressed a doubt whether he was at liberty to give it any attention. The reasons in favor of hearing the evidence of the wife are pretty strong in a proceeding of this character, and the policy of the rule on which her testimony against the husband is generally excluded, can hardly be said to exist in this particular case. The parties are already engaged in an angry controversy, and there is much ground to fear that their feud can never be healed. There is, however, room for doubt whether the testimony of the wife should in any case be received against the husband, except where she complains of personal violence or ill treatment of herself; and if the facts stated by Mrs. Ordronaux were important to the conclusion at which I have arrived on the main question, I should not receive her affidavit without taking time for consideration.

In relation to the general question, it can hardly be doubted that the father is entitled to the custody of his infant children; and where, as in the present case, differences unfortunately exist between the parents, the right of the father is preferred to that of the mother. I shall not stop to inquire into the fitness of the rule. It is enough that it is settled by authority. The statute under which these writs were sued out proceeds upon the assumption that the father has the better right. It authorizes the court to interfere on the application of the wife only, and evidently supposes that she alone needed any extraordinary remedy. It is true that the courts, on the common writ of *habeas corpus,* have not always committed the children to the custody of the father. It is not the object of that writ to try the right of parents or guardians to the custody of infants, but to deliver from unjust imprisonment, and all illegal or improper restraints. [643] When, therefore, infants have been brought into court who were of the age of discretion, they have frequently been consulted in relation to their wishes, and have been informed that they were at liberty to go where they pleased. Cases of this kind prove nothing in favor of the claim of the mother, and many of them admit the superior right of the father.

The father, however, has not an absolute, unalienable right to the custody of his infant children. This, like other rights, may be forfeited by misconduct. And although courts of law have not interfered by *habeas corpus* in such cases, the father has been controlled in the exercise of his parental power by the court of chancery in England. This authority is said to belong to the king, as *parens patriæ,* and is exercised by the chancellor as his representative. In *The King* v. *De Manneville,* (5 *East,* 221,) the court of king's bench on *habeas corpus* refused to take the child from the father and restore it to the mother, although the father had by force and stratagem taken the child when at the breast; but on an application to the chancellor, Lord Eldon made an order restraining the father from

taking the child out of the kingdom. (10 *Vesey*, 52.) In *Wellesley* v. *The Duke of Beaufort*, (2 *Russ.* 1,) the chancellor appointed guardians, and restrained the father from assuming the custody of his infant children.

The statute under which the writs in this case were issued seems to have been suggested by the practice of the English court of chancery, which has been mentioned. It has conferred on this court the power, which it did not before possess, of interfering between the husband and the wife in relation to the charge and custody of their minor children. The children may, under certain circumstances, be committed to the mother " for such time, under such regulations and restrictions, and with such provisions and directions as the case may require." (§ 2.) I have entertained some doubt whether this was a proper case for consulting the children in relation to their wishes. This is not a proceeding for the purpose of relieving them from any improper restraint; but it is a contest between [644] parents in relation to the future charge and custody of their children. But as the legislature has not declared on what grounds the court shall proceed, but has confided the whole matter to our discretion, I have concluded that it was not improper to consult the children, and have conversed with them severally in relation to their present condition, and their wishes for the future.

It only remains that I examine the evidence which has been adduced for and against the granting of this application. [Here the judge examined the allegations and proofs of the parties in detail; and then concluded:] This is not a case where the court is to interfere as a matter of course, but only upon some sufficient grounds. The children are in good health—they are in schools of the best repute, where their morals and comfort, as well as their education, receive all proper attention. Their mother is permitted to visit *them* at pleasure, and they occasionally visit *her*. Their father is a man of good character, and it is abundantly proved that he is a fit and proper person to have the charge and custody of the children. On the evidence before me, I am unable to make the same remark in relation to the mother. On the whole, there does not appear to be any sufficient ground for the interference of the court, and the application of Mrs. Ordronaux must be denied.