**596**

1836.

Wood
v.
Wood.

## E. Wood and others *vs.* J. B. Wood & S. Wood.

The law of the testator's domicil governs the disposition of his personal es-
tate, and his real estate which is situate where he is domiciled. And where
the testator was a resident of the state of New-York at the time of his
death, and by his will directed his personal property, and the proceeds of
his real estate there situate, to be invested in real estate in the state of Ohio,
upon trusts which were invalid by the laws of New-York; *Held* that the
devise in trust was invalid, as it was inconsistent with the law of the tes-
tator's domicil.

Where the right or interest of a cestui que trust in property which is to be in-
vested in land upon trust to receive the rents and profits thereof for his use,
is inalienable by the provision of the 63d section of the article of the revised
statutes relative to uses and trusts, the trustee is not authorized, even with
the assent of the cestui que trust and with the sanction of the court of chan-
cery, to do any act which would be a virtual alienation of the trust fund di-
rected to be so invested in trust. But where the fund is directed to be
invested in the purchase of land in a particular place, upon such a trust, the
court of chancery may, with the assent of all parties who have any interest
in the trust fund, or in the lands to be purchased therewith, authorize it to
be invested in the purchase of real estate in another place, upon the same
trusts; and the chancellor, as the general guardian of infants who are
interested in the trust fund, may assent to such change of investment in
their behalf.

Where a testamentary guardian holds a fund for the sole benefit of his wards,
in his character of guardian, to be invested for their use, the court of chan-
cery may change the investment from that which is directed by the testa-
tor, where it is for the benefit of the infants that such change should be
made, even without the consent of such guardian.

A devise of all the testator's real and personal estate to a trustee, to be sold
and converted into money, and to pay the widow an annuity out of the in-
come of the mixed fund composed of the proceeds of the real and personal
property, is not of itself sufficient to show that the testator intended this
provision for the widow to be in lieu of dower, so as to compel her to elect
between such annuity and her dower in the real estate.

Where the testator directed the investment of his estate in the purchase of
lands for the benefit of his three infant children, upon an express trust to
receive the rents and profits of their several shares thereof, for their use,
until they should attain the age of twenty-one or twenty-two, in the discre-
tion of the trustee, with cross-remainders between themselves if they died
before they came into possession of their several shares without issue, and
with remainder to their heirs of the blood of the testator, if they all died be-
fore that time without issue; *Held,* that the ultimate limitation over to
their heirs was void, as being too remote.

Where the testator directed his property to be invested in the purchase of
lands in the names of his children, but in trust for their testamentary guar-

dian to receive the rents and profits for their use, after as well as before they arrived at the age of twenty-one, so long as he thought proper; *Held,* that such a trust was not authorized by the revised statutes; that no estate or interest vested in the trustee; and that he held the fund as testamentary guardian merely.

To enable a trustee to receive the rents and profits of lands for the use of another person, it is necessary that he should have the legal title to the land itself. And where the land itself is vested in the person beneficially intersted therein, a valid power in trust cannot be given to a trustee to receive the rents and profits of such land for the use of the person who holds the legal title of the land.

A parent or guardian has the right to change the domicil of his child, or ward, provided such change is made in good faith; subject, however, to the power of the court of chancery to prevent an improper removal of an infant out of the state.

The court of chancery has power to restrain a parent or guardian from removing an infant out of the jurisdiction of the state; but it will not interfere with the natural right of a parent over his child, except in a very special case.

Where a father appointed a testamentary guardian for his children, who were all under the age of seven, and directed the guardian to remove them to the state of Ohio, and to invest their property there upon certain trusts which were illegal by the laws of New-York, where the children were residing with their father at the time of his death, and the widow refused to go with them to the state of Ohio, and asked to have them remain with her in this state, the court restrained the guardian from taking the children from their mother, and removing them out of the state, until further order.

An executor, or a trustee appointed by the will of a testator, is bound to carry into effect all the valid trusts of the will, unless he is excused from a strict performance by the parties interested therein; and with the sanction of the court of chancery, where the rights of infants are concerned.

THE bill in this cause was filed on behalf of three infant children, by their next friend, against J. B. Wood, their uncle, the executor of their father and their testamentary guardian, to obtain a decree declaring the trusts of the will void, or that the fund directed to be invested in the state of Ohio might be invested for their benefit in this state; and to prevent such testamentary guardian from removing the complainants out of the jurisdiction of this court to the state of Ohio. The mother of the infants, who was entitled, under the will, to an interest in the testator's property during her widowhood, was also made a party defendant. The cause was heard upon bill and answer. The facts in the case, upon which the next friend of the complainants

1836.

Wood
v.
Wood.

asked for a decree in their favor, were substantially these : The father of the complainants formerly resided in the city of Albany, and his will was proved before the surrogate of Albany county, on the ground that the last place of residence of the testator was in that county. He died at the Havana, where he had gone for his health, in 1833 ; leaving a widow and three infant children, the complainants in this suit. The eldest of his children was then about six years of age, and all were under the age of seven at the time of filing the bill in this cause. The father of the complainants, at the time of his death, owned two building lots, in the city of Albany, worth about $1400 ; and he left personal estate, which was worth about $13,600 more than was required to pay his debts. By his will, made a short time before his death, he devised and bequeathed all his estate, real and personal, to his brother, the defendant, in trust, to sell and convert it into money, and out of the proceeds thereof to pay his debts and the expenses of administration, and the expense of removing the widow and children of the testator to the state of Ohio. *Secondly*, in trust, to invest one third of the residue in the state of Ohio, in such manner as he should think proper, and to keep the same invested, and change the investments as the trustee should think proper during the widowhood of the testator's wife ; and to pay to her, semi-annually, at the house of the trustee in the state of Ohio, during her widowhood, a sum equal to six per cent. per annum on such third of the estate ; and in case of her re-marriage, to pay to her one third of that third, and to invest the other two thirds thereof in the purchase of lands for his children in the state of Ohio, as directed in the next clause of the will. *Thirdly*, to invest one other third of the estate, after paying debts, &c. in the purchase of lands in the state of Ohio, for the testator's three children, in equal proportions, and to take the conveyances therefor in their names ; and to sell the same and purchase other lands for them as often as he should deem it for their interest. *Fourthly*, he gave to the trustee, whom he appointed the testamentary guardian of his children, the remaining third of his property, and the rents and profits of the real estate so to be purchased for them, during their respective minorities, for

the purpose of enabling him to clothe, support and educate them, in the state of Ohio, in such manner as he should think proper, except that the boys should be brought up and fitted for farmers. And the trustee and testamentary guardian was desired and directed, by the will, thus to clothe, support and educate them, in the state of Ohio. The testator further directed that his children should not be permitted to enter into the possession and enjoyment of the lands, to be purchased for them respectively, until they arrived at the age of twenty-two, unless the trustee should think proper to allow them, or either of them, to enter into the enjoyment therof before that time ; and if either died without issue, before entering into the enjoyment of such lands, that then the lands, so to be purchased for him or her, by the trusee, should go to the survivors or survivor. And the testator further authorized the trustee to receive the rents and profits of the lands purchased for either of the said children, and to expend the same for the use of such child, even after he or she had arrived at the age of twenty-two, if in the judgment of the trustee that course should be deemed to be most for the happiness of such child. *Fifthly*, the testator devised the lands, so to be purchased for his children, to the heirs at law of his own blood, if all the children should die without issue. And he authorized the trustee, in case of his death, to bequeath all his trust powers and duties to the executor of such trustee.

*A. Taber*, for the compainants.

*M. T. Reynolds*, for the defendant J. B. Wood.

THE CHANCELLOR. Although the father of these complainants has made a most singular, and probably a very indiscreet disposition of his property, considering the situation of his family and the tender ages of his children at the time of his death, I cannot perceive that the defendant, J. B. Wood, has done any thing, or has attempted, or even claimed the right to do any thing which he had not reason to believe it was his duty to do, as the executor of his brother and the testamentary guardian of the complainants, and as a faith-

ful trustee of the decedent's property, under the will. So far
as the trusts of a will are valid and consistent with the rules
of law, the executor and trustee is bound to carry them into
effect, whatever he may think of the wisdom of the testa-
mentary disposition which the testator had thought proper to
make of his property; unless he is excused from a literal per-
formance of the trust, by the consent of all parties, either di-
rectly or indirectly interested in the execution thereof, and
with the sanction of the court of chancery, where the rights
and interests of infants or of married women are concerned.
And where the right or interest of the cestui que trust in the
trust property is rendered inalienable, by the provision con-
tained in the sixty-third section of the article of the revised
statutes relative to uses and trusts, the trustee cannot, even
at the request of the persons beneficially interested, and with
the assent of this court, do any act, or consent to any differ-
ent disposition of the estate, which would be a virtual aliena-
tion of the property devised to him in trust. But where the
testator has directed the trust fund to be invested in the pur-
chase of land in a partiular place, and required the trustee to
apply the rents and profits of such land for the use of the ces-
tui que trust during his life, or for any shorter period, this court
may, with the assent of all persons who have either vested or
contingent interests in the fund or in the lands to be purchas-
ed therewith, authorize the trustee to invest the fund in lands
or other real estate in another place, upon the same trusts.
And if any of the persons who are thus interested are infants,
and within the jurisdiction of this court, the chancellor may
assent to such change of investment in their behalf. Also,
where a testamentary guardian holds a fund for the benefit of
infants, in his character of guardian merely, the court may
change the investment from that which the testator has di-
rected, even without the consent of such guardian, where it is
manifestly for the benefit of the ward that such change should
be made. It is necessary, therefore, to examine this will, for
the purpose of ascertaining the validity of the several provis-
ions thereof, and determining the nature and extent of the
several interests of the parties to this suit, and of other per-

sons, in the estate of the decedent, under the will or otherwise.

Although the testator directs all his estate to be sold, and one third of the proceeds to be invested for the use of his wife during her widowhood, it does not appear, by any necessary implication from the will itself, that he intended this provision to be in lieu of dower in the real estate of which he died seized. The widow is not therefore obliged to elect between that provision and her dower. The question has frequently been discussed in the English court of chancery, how far and when a legacy or annuity to the wife, charged upon the real estate of the testator, is to be considered as a provision in lieu of dower, and there have been many conflicting decisions on the subject. (See *Arnold* v. *Kempstead*, 2 *Eden's Rep.* 237, *note; and French* v. *Davies*, 2 *Ves. jun.* 572.) I am satisfied, however, from an examination of the American, as well as the English cases, that a devise of all the testator's real and personal estate to trustees, to be converted into money, without any particular designation of the real property to be sold, and giving to the widow an annuity or other provision out of such mixed fund, is not, of itself, sufficient to show that the testator intended that her interest in the land, as tenant in dower, should be sold as a part of the estate ; so as to make it necessary for the widow to elect between such dower and the provision contained in the will. The widow in the present case is therefore entitled to both.

Neither is it necessary that the widow should go to the state of Ohio with her children, to entitle her to the six per cent. per annum on the amount of one-third of the property. The annuity is made payable at the house of the trustee in the state of Ohio ; and if he resides in that state and has a dwelling house there, and has actually invested the third of the property, out of which her annuity is payable, in that state, as directed by the will, she must go there to receive the semi-annual payments, or must employ an agent or attorney to receive the payments at the place designated by the testator. This investment was not intended by the testator to be made in the purchase of real estate ; but, on the contrary, he intend-

1836.

Wood
v.
Wood.

ed that this portion of his estate should be invested in loans upon bond and mortgage, or in the purchase of stocks, which would yield a semi-annual income ; so as to enable the trustee to pay the six per cent. per annum to the widow, without any diminution of the capital of the fund. So far as relates to the investment of this part of the fund, during the life, or widowhood, of the wife of the testator, I can see no legal objection to the disposition which the testator has thought proper to make of this third of his property. He had a right to direct how and where the investment should be made for the benefit of the annuitant, and the time and manner of the payments. And as the infant complainants are entitled to the reversion of the two thirds thereof after the death or re-marriage of their mother, the place of the investment cannot be changed, except by the sanction of this court, even if the widow and trustee both consent to have the fund invested elsewhere. If the direction to invest the two-thirds in land, upon the re-marriage of the widow, and the limitations over of the ultimate remainder in case of the death of all the complainants without issue before they come into the enjoyment of the estate, are valid, it follows that the mode of investment cannot be changed, even with the consent of all persons who are now in existence, as it is impossible to say who will be the heirs of the children, of the blood of their father, at the death of the last survivor.

I have arrived at the conclusion, however, that the limitation over to the heirs of the blood of the testator is void, as being too remote. The absolute power of alienation cannot be suspended beyond two lives in being at the death of the testator. And this case does not come within the exception contained in the sixteenth section of the article of the revised statutes relative to the creation and division of estates ; (1 *R. S.* 723 ;) for the limitation over does not depend upon the death of all the children without issue under the age of twenty-one, as they may, by the terms of the will, be kept out of the enjoyment of the property until they are twenty-two, if the trustee thinks proper. And upon the death of two of the children without issue, the third would take the ultimate remainder in fee, as the only heir of the blood of the testator, under the

provision contained in the 17th section of that article of the revised statutes. This objection is equally applicable to the contingent limitation over, to the heirs of the testator's blood, of the lands directed to be purchased for the infants with another third of the testator's property, after the death of all of the children without issue.

It may, perhaps, be supposed that the provisions of the revised statutes do not apply to this case, as the lands directed to be purchased are in another state, where the common law rules prevail; by which rules a contingent limitation over, at the termination of any number of lives in being at the creation of the estate, is valid. But the laws of this state, which was the testator's domicil, must govern the disposition of his personal estate, and the proceeds of his real property situate here; and no valid disposition could be made of any of his property by will, which disposition would be illegal by the laws of this state. The direction, therefore, to invest the proceeds of the testator's property in the purchase of Ohio lands, upon trusts which are illegal here, cannot be sustained.

The contingent right of the trustee to receive the rents and profits of the share of each of the complainants, after the age of twenty-two, even if it were valid in other respects, is not such a trust as is authorized by the revised statutes; as by the express direction of the testator the conveyances for the lands purchased are to be taken in the names of the children, and not of the trustee. And the authority to receive the rents and profits and apply them to the use of the children for life, or for a shorter period, in the discretion of the trustee, after they arrive at the age of twenty-two, is not valid as a power in trust merely; as it is necessary that the trustee should have the legal estate to enable him to collect the rents and profits in his own name, either by distress or otherwise. It is because a seisin of the legal estate is necessary to enable the trustee to collect the rents and profits, that a devise of the legal estate in the rents and profits to a trustee for a term of years, or for any other limited period, carries with it the legal estate in the land for the same term or time, by necessary implication, at the common law. (*See Stile* v. *Tomson,* 2 *Dyer's Rep.* 210, *a. Courthope* v. *Heyman, Carter's Rep.* 25.) The same objection

1836.

Wood
v.
Wood.

applies to the devise of the legal estate in the rents and profits of the lands to be purchased, to the trustee, for the support and maintenance of the children during their minorities, as a valid trust, or power in trust, under the provisions of the revised statutes. And as the legal title to the land, to be purchased with the share of the estate belonging to each infant, is directed to be taken in the name of the infants respectively, the right to receive the rents and profits in the character of trustee, or in any other way than merely as the testamentary guardian of the infants, is wholly inconsistent with the nature of their legal estate in the land; as, by the provisions of the revised statutes, the infants cannot hold the legal title in trust to let another trustee receive the rents and profits in trust, for their support as far as is necessary, and to keep the residue for his own use. The one-third of the net proceeds of the testator's property, and the reversionary interest in another third after the death or re-marriage of the widow, subject to the payment which is to be made to her in case of such re-marriage, belongs therefore to the infants absolutely; and their uncle has no interest therein, or control over the fund, except in the character of testamentary guardian, and for their exclusive benefit.

There being no legal trust vested in the testamentary guardian, in the character of trustee, which can be sustained under the provisions of the revised statutes, this court may lawfully control the exercise of the legal power of the guardian over the property, by giving such directions in relation to the investment of the infants' shares thereof as may be most beneficial to them, under the existing circumstances, which were not contemplated by the testator at the time of making his will. I will therefore proceed to consider the question, whether it is expedient for the court to give such directions to the testamentary guardian in the present case.

It is very evident, from the will, that the decedent, for some reason which he has not explained, was very desirous that his widow and children should leave this state, where his as well as her relatives resided, and should remove with his brother, the trustee, to the state of Ohio; where, it is admitted, none of them had any relatives, or even acquaintances. The trusts

of the will, which he probably supposed to be valid, were framed in reference to such a romoval and location of his family in that state. It turns out, however, that the widow is not willing to remove with her infant children to so great a distance from the residence of her friends, and to locate herself entirely among strangers. And it appears to the court that her objections to such a change of residence are not unreasonable under the circumstances of this case.

I have no doubt as to the right of a parent or guardian to change the residence of his infant children, or wards, from one state to another, provided such change of residence is made in good faith and with a view to their benefit; subject, however, to the power of this court to restrain an improper removal of an infant by his guardian, or even by his parent. It must be a very extreme or special case, however, which would induce this court to interfere with the natural rights of a parent in this respect. That such a power exists in the court of chancery, was settled by Lord Thurlow, in the case of *Creuze* v. *Hunter*, (2 *Cox's Ca.* 242.) The jurisdiction of the court on this subject was again exercised, by Lord Eldon, in *De Manneville* v. *De Manneville*, (10 *Ves.* 52;) where the father of the infant, a French emigrant, was restrained from removing the child out of the jurisdiction of the court. And in the recent case of the nephew of the duke of Wellington, a son of Lord Maryborough, the house of lords, with the entire concurrence of Lord Chancellor Lyndhurst, and of Lords Redesdale and Manners, two former chancellors of Ireland, affirmed the decision of Lord Eldon, in refusing to a profligate father the custody and control of the persons of his infant children. (*See Wellesley* v. *Wellesley*, 2 *Bligh's Parl. Rep., N. S.,* 124. 1 *Dow & Clark*, 152, *S. C.*) This court has the same jurisdiction over a testamentary guardian as it has over a guardian in socage, or any other guardian; and in this case it would be improper to permit the testamentary guardian to take the infant complainants from their mother and carry them among strangers, several hundred miles from her residence, at their present tender ages. He must not take them from her, therefore, without the further order of the court; which order he is at liberty to apply for whenever it may be proper. As the third of the estate was given to him,

charged with the expense of the education and support of the infants during their minority, or with so much of such expense as the income of their share of the estate falls short of that object, if he accepts the legacy to himself he must apply so much thereof, from time to time, for their support and maintenance, as may be necessary in addition to the income of their own property; but the whole of such expense is not to exceed what it would have cost for their maintenance and education in the manner contemplated by the testator in his will. And as the testator has directed that his sons should be educated for farmers, the court will so far regard his wishes, in this respect, as to require that they shall be put to that employment, either by or under the direction of their testamentary guardian, as soon as they are old enough; and that they shall be kept at farming during those seasons of the year when it is usual for farmers to keep their children so employed.

As the trusts of this will are many of them illegal, and none of them can be carried into effect in the manner contemplated by the testator, and as the testamentary guardian and executor appears to be willing to do what is proper, and consistent with his duty as a faithful trustee, I would recommend to the mother and the next friend of the infants, to endeavor to make some amicable arrangement with him for the investment of the two-thirds of the property, in this state; and for the custody and support of the infants until the boys are old enough to be put to farming. Any such arrangement which may be thus made between them and the executor and guardian, and which is consistent with the rights and interests of the infants, and the safety of their persons and property, will receive the sanction of the court. In the mean time I shall suspend the entering of any decree or order, for the present, to enable the parties to perfect such an amicable arrangement, if possible.