Barbour, J. (dissenting.)
As I understand the evidence, and the findings of the referee, in this case, the defendant Allerton actually received, under and by virtue of the assignment to him, not only lands and real estate of which Strauss was the owner individually, amounting in value to some nine thousand dollars, but, also, a quantity of beef, and some cattle, horses, carts, and wagons, belonging to the firm, together with their books of account containing charges against sundry debtors to the amount, nominally, of seventy-five or eighty thousand dollars.
It is, probably, not very important, however, so far as concerns this case, whether the assigned property was wholly that of Strauss, or in part, belonged to the firm. The assignment purports, by its seal, to have been founded upon a suffificient consideration, and it was valid within the statute, as a trust for the payment of debts. It is entirely immaterial, therefore, whether it was or was not a trust to pay the indebtedness of a person other than the one who furnished the property.
The duty of the assignee, under this trust, was fully expressed in the instrument itself. He was required to convert the whole of the property and assets into money, and to apply the proceeds, in the first instance, to the payment of the debts of the copartnership, and, secondly, to pay over the surplus, or so much thereof as should be necessary, to the creditors of each of the assignors, individually.
An honest departure from a literal compliance with the direction to convert the assets into money, would, doubtless, have been excusable in some supposable cases. If, for instance, the assignee had, under an agreement to that effect with all the creditors of the first class, transferred to them, or to their appointee, the whole or a portion of the assigned property itself, at its fair value, in satisfaction, entirely or pro tanto of their just claims, instead of first converting it into money, such transfer *565 would have been held, in equity, a good execution of the trust, to that extent. But that was not done in this case. None of the property covered by the assignment was conveyed or delivered, in specie, to the creditors of the firm, nor, even, was its redelivery to the assignors provided for in the composition deed. But, on the contrary, the assignor paid to them about $9000 in money, which he had received from sales or collections, and, in consideration of that payment, and the execution to them of new notes by the assignors, to the amount of twenty-five per cent of the indebtedness, such creditors of the partnership acknowledged, in writing, a full satisfaction and discharge of their claims, and consented that the assignment be surrendered and canceled, and that an order of court should be made and entered, if necessary, to that effect.
It appears to me that the status of the assigned estate and effects which were in the hands of the assignee at the time of the execution of this composition deed remained, and was, wholly unaffected thereby. No provision was made in that instrument for the application of such assets to the payment of any part of the indebtedness of the firm ; nor, it may be added in this connection, does it appear that they were, in fact, so applied, either in the arrangement between the parties to the deed, or otherwise. The permission given to the assignee to surrender and cancel the assignment was, of course, inoperative as to any of the eestuis que trust, except those who were parties to the deed. Indeed the consent so given by the first class creditors was simply a permission to the assignee to do an act which, so far as they were concerned, he would have been legally entitled to perform without their assent, upon a satisfaction and discharge of their claims, and was therefore quite useless. In its bearings upon this case, therefore, the arrangement between the parties to the composition deed must be considered as intended merely to discharge the indebtedness of the firm to its creditors of the first class, and to release the assignee from further liability to them under the trust, in consideration of the receipt of some nine thousand dollars from the assets, which then belonged in equity *566 to those creditors, and a further sum in new promissory notes1 of the assignors themselves, in place of other obligations or liabilities of theirs for a larger amount, which were provided for in the assignment. In a word, the claims of the partnership creditors which remained unpaid by the assignee, were satisfied by the debtors themselves, and not out of the assigned property, nor, I think, by any arrangement which impaired the right of the creditors of the second class to have the trust estate and effects which remained in the assignee’s hands when the composition deed was executed, applied to the satisfaction of their claims ; and it follows that it was the duty of the assignee, notwithstanding such arrangement, to proceed in the execution of his trust for the benefit of those concerned in interest, unless, and until, he should be legally discharged from the obligation he had assumed.
After the composition deed was executed, and when the order of the Supreme Court was made, the assignee held the title to all the real estate covered by the assignment, as well as three horses and some old wagons. The referee has found that the horses and wagons were of but trifling value. It can hardly be supposed that he considered their value so small as to bring them within the maxim “ de minimis non curat lex.” He probably used the term comparatively, and with reference to the aggregate value of all the assigned property. Be that as it may, however, the real estate, certainly, can hardly be deemed liable to such an objection, as it was worth some $3000, at least, over and beyond all incumbrances upon it.
The question then is, whether the order of the Supreme Court, conditionally releasing and. discharging the assignee from all .further duties under the trust, legally empowered him, as against the rights of the plaintiff as a cestui que trust, to reconvey and return the assigned property to the grantors ; or whether, by obtaining that order and making such reconveyance, or either, he has incurred a liability to the plaintiff for which he is answerable in this action.
As a general rule, and except for the statute, (2 R. S. 730, *567 § 88,) a trustee of an express trust, having accepted the same and entered upon its duties, must continue to execute the same, unless excused therefrom by all the parties interested in such trust. (Wood v. Wood, 5 Paige, 596. Shepherd v. McEvers, 4 John. Ch. 136. Cruger v. Halliday, 11 Paige, 314. Diefendorf v. Spraker, 10 N. Y. Rep. 246. Matter of Van Wyck, 1 Barb. Ch. 565.) The reconveyance of the estate by him to the grantor is a violation of the trust. (Diefendorf v. Spraker, ubi sup.) For such a reconveyance, if effective, is the destruction of the trust estate itself j and if it results to the injury of the cestui que trust, the trustee will be liable to him therefor. The justification of the defendant Allerton, if any he has, for the reconveyance of the trust property to his assignors, and the consequent destruction of the estate, must therefore be sought for in the order of the Supreme Court.
The section of the statute upon which that order was founded is in the following words :
“ Upon the petition of any trustee, the Supreme Court may accept his resignation, and discharge him from the trust, under such regulations as shall- be established by the court for that purpose, and upon such terms as the rights and interests of the persons interested in the execution of the trust shall require.” (2 R. S. 730, § 88, [69.] )
The legislature undoubtedly intended, in this section, to empower the Supreme Court to release and discharge a trustee who found it impossible or inconvenient to act further in the execution of the trust; and the power conferred upon the court to settle the terms on which such discharge should be effected, was given for the purpose of enabling it to preserve and protect the rights and interests of the beneficiaries, by the imposition of such conditions, in regard to the settlement of-the accounts of the outgoing trustee, and the disposition of the trust fund and property, &c. as such court should deem necessary for that purpose. It is impossible to suppose they designed to vest the court with the power, upon an ex parte application of the trustee, to which the Gestuis que trust were not parties, to- destroy or to authorize, by its order, the de *568 struction of the trust estate itself. That would be entirely inconsistent with the authority given to the court to fix such terms as the rights of the persons intrusted in the execution of the trust shall require ; the only terms, be' it remarked, that the court is authorized by the statute in question to impose. The terms mentioned in the act were intended, as its letter shows, for the protection of the persons interested in its execution ; and not such as would authorize the trustee to destroy the trust estate and, with it, all the rights and interests of the beneficiaries. So much of the order, therefore, as directs “ that the assignee be permitted to surrender the said assignment, and to reassign and restore the assigned property, or the proceeds thereof,” to the assignors, is unauthorized by the statute, and as to the plaintiff, who was not a party to the special proceeding upon which it was obtained; wholly inoperative and void ; and for that reason, such order affords no justification to the defendant Allerton, for the assignment and restoration of the property to the assignors, and the consequent destruction of his estate therein in trust. It may be added, that even had the statute expressly authorized just such an order and reassignment as have been made in this case, upon a mere exparte petition of the trustee, I should find but little difficulty in arriving at the conclusion that the unpaid cestuis que trust could not thus be divested of their- equitable interests in the trust fund; for that would be to deprive them of their property without that “ due process of law ” which the paramount law of the land contemplates.
Again : The order in question does not command or require the assignee to reconvey and restore the property to the assignors, nor declare, in presentí, that he is discharged of his trust; but it simply directs that he be permitted to do so; and declares that, upon the restoration of the property and the surrender of the assignment to the assignors, he shall be discharged from the trust. The order, therefore, left it entirely optional with the assignee to. make such restoration and surrender, while he yet remained the trustee of an express trust, as yet. unexecuted in part, and thereby to destroy the trust *569 estate, or to refrain therefrom. It was, at best, but a mere permission to the defendant Allerton to do an illegal act, at his own risk and. hazard.
I am also of opinion that the order of the Supreme Court cannot, in equity, be so construed upon the trial of this action as to authorize a return of the property to the assignors, and the cancelment or surrender of the assignment, so long as the trust remained unexecuted. Being an order in a special proceeding, under a statute, it should be read in the light afforded by the petition of the assignee, on which it was founded, in order to ascertain its object, scope and meaning, as well as the design and intention, not only of the court by whom it was granted, but of the petitioner himself. Now, as the petition of the assignee alleges, in effect, that all the creditors who are interested in the trust have been satisfied and have released the assignors, the order ought, in equity, to be considered upon the trial of this action as having been designed to meet just that case, so presented by the petitioner ; and as authorizing the assignee to return the property to the assignors, and surrender the assignment at a future time, when the facts stated in the petition should really exist, and such surrender and return could be made legally, and without depriving any of the beneficiaries of their rights and equitable interests in the property belonging to the trust estate. The principle of the rule laid down in Haydon’s Case, (3 Rep. 7,) and still adhered to by all courts, authorizes us, I think, to ascertain the intention of the court in the manner above suggested; and “ Omne actum ab ag'entis intentions est judicandum."
If, however, we consider the order as authorizing the return of the property and surrender of the assignment at the time those things were done, although the claim of the plaintiff then remained unpaid, then, it appears to me, we are compelled to hold that the trustee is, in equity, estopped by his petition to claim, upon the trial of this action, that an ex parte order procured by and through his own misrepresentations, can justify an act inequitable in itself, which was not contemplated by the court when such order was made. To decide otherwise *570 would be to permit such trustee to obtain an advantage by means of his own wrongdoing ; which is permissible neither at law nor in equity. “ Nullus commodum capere potest injuria sua propria.”
I am of opinion, therefore, that the order of the Supreme Court furnishes no justification for the defendants ; and that, upon the facts found by the referee, the plaintiff was entitled to a judgment.
The judgment appealed from should be reversed, with costs, and a new trial awarded.
Judgment affirmed.