## COLGATE'S EXECUTOR vs. COLGATE.

1. A devise of real estate to trustees to pay the widow the income, will not put her to her election, under the sixteenth section of the dower act.

2. If the provisions of the will are inconsistent with the dower of the wife in the testator's real estate, the provision for her in the will will be held as intended in lieu of dower, and she shall be put to her election.

3. A devise of all the residue of testator's estate to his executors in trust, to sell and dispose of his real estate, and to convert the personal estate into money, and to divide the proceeds of his real and personal estate into two equal parts; to invest one of such parts, and pay the income thereof to his wife during her natural life, and on her death to divide the principal equally among his children then living, and to divide the remaining half into as many equal shares as he should leave children him surviving, and to pay one of such last named shares to each child, &c.—the rents and income of the real estate until the sale having also been directed to be divided in the same shares—is inconsistent with the estate in dower, and the widow must elect.

4. A contract made by an executor of a deceased member of a firm, with a firm of which the executor is himself a member, for the sale to them of his testator's real estate, is not one which a court of equity will

confirm, if it is opposed or contested by any of the *cestuis que trust;* much less will it decree a specific performance of it.

5. An agreement by testator's widow, (even if made,) that the firm of which he was a member should take his interest in real estate belonging to the firm, at a valuation made shortly after his death—the widow being entitled, under the will, only to the income of half of the estate during her life, and an infant to the other half absolutely on attaining age, and though appointed guardian, by the will, of such child, having no judicial authority to enter into any agreement or bargain with regard to his real estate—would not deprive her and the child of the right to have it sold at the full value it will bring at the time of the sale.

6. When it is necessary that lands held in trust should be sold, and the trustee is in a situation that induces him to give more than any other purchaser would give, the court may authorize a sale by him, at a full, fair price to be approved by the court, to himself or to some one for his benefit.

7. When a member of a firm holds lands in trust, and it is necessary that they should be sold, and the firm are willing to give full value for them, the court will order a sale and conveyance by the trustee, to or in trust for such firm.

8. In a case where an infant appears by his guardian *ad litem* only, and the interests of the infant require it, the guardian will be directed to employ counsel approved by the court to represent him.

9. One executor can sell and dispose of personal property; and a sale by him of the personal assets of his testator to a firm of which his co-executor is a member, is not, *ipso facto,* if there is no fraud, void. A sale by him and his co-executor to a firm so composed, would be liable to be set aside in equity, both on account of fraud, and for any inadequacy of consideration.

10. The executors having terminated the partnership of their testator pursuant to their powers, that termination of it is valid so far as to protect the firm from being liable to the estate for a share of the profits since made, and to protect the estate from a share of the losses.

This cause was argued upon bill, answer, and proofs.

*Mr. Gilchrist,* Attorney-General, for complainant.

*Mr. Dutcher,* for Sallie Colgate.

THE CHANCELLOR.

The bill filed in this cause was filed for the construction of the last will of Joseph Colgate, deceased, in regard to the claim of dower by his widow, and for the specific perform-

ance of an alleged agreement made by Samuel Colgate, as acting executor of said will, and William Richardson, also named as an executor therein, to sell the testator's interest in the partnership assets of the firm of Colgate & Co., and in certain real estate owned by the testator and Samuel Colgate and Charles C. Colgate, as tenants in common, to Samuel Colgate and Charles C. Colgate, the surviving members of the said firm, or for a sale of such interests, and that Samuel Colgate, although such executor, may be at liberty to purchase the same.

The facts, as admitted by the pleadings or proved, are as follows: Joseph Colgate, a resident of and domiciled in the city of New York, died April 24th, 1865, while temporarily at Berlin, in Prussia. He left a last will, dated February 5th, 1864, and a codicil thereto dated March 3d, 1865, by which he directed the payment of his debts, &c., and gave and devised all the residue of his estate to his executors, or such of them as should qualify and take upon themselves the execution thereof, in trust, to sell and dispose of his real estate, at such time or times, and in such manner, either at public or private sale, and upon such terms as they might think proper, and to convert the personal estate into money, and to divide the proceeds of his real and personal estate into two equal parts; to invest one of such parts, and pay the income thereof to his wife, Sallie Colgate, during her natural life, and on her death to divide the principal equally among his children then living; the remaining half to be divided into as many equal shares as he should leave children him surviving; to pay one of such last named shares to each child that should have attained the age of twenty-one years; to invest one of such shares for each of his children who should be a minor, and to pay the income thereof, or so much as might be necessary for his support, to such minor until he should attain the age of twenty-one years, and allow the residue of such income to accumulate for his benefit, and upon his attaining that age, to pay to him the principal and accumulations of such share.

The testator authorized his executors to join with any other persons in the voluntary sale or partition of his real estate held in common, or in which he held any divided share or interest at the time of his death. He directed that until his real estate should be sold, the executors should receive the rents, issues, and profits thereof, and apply the same to the same uses and purposes as the income from the proceeds were directed to be applied.

He appointed his wife Sallie Colgate, his brother Samuel Colgate, and his friend William Richardson, the executrix and executors thereof. The codicil related only to a contingency that did not occur.

The will was proven before the surrogate of the county of New York, by whom letters testamentary were issued to the said Samuel Colgate and William Richardson, September 28th, 1865, and was also afterwards proven before the surrogate of Hudson county, New Jersey, June 8th, 1867, by whom letters testamentary were issued to the said Samuel Colgate, who alone qualified in New Jersey.

The testator left surviving him his widow, Sallie Colgate, and two children, Eugene Colgate and Mortimer Colgate. Mortimer died November 15th, 1869, (since the bill was filed in this cause,) in infancy, intestate, and without issue.

The testator, prior to and at the time of his death, was a member of the firm of Colgate & Co., manufacturers of and dealers in soap. The firm was composed of said Samuel Colgate, the defendant, Charles C. Colgate, and the testator, each partner having an equal one-third interest therein. The assets of the firm consisted of bills receivable, stock manufactured and unmanufactured, in New York and New Jersey, leasehold property in New York, and the tools, utensils, and furniture used in the manufacture and sale of soap, situate in their factories in Jersey City, and in their store in New York.

The testator also owned in fee, as tenant in common with Samuel Colgate and Charles C. Colgate, one undivided third part of certain real estate situate in Jersey City, known as

the "Starch Factory Property," and also of certain real estate situate in that city known as the "Soap Factory Property." Each tenant in common owned an equal undivided one-third part thereof. This real estate, although so vested in each partner individually, was entered upon the books of the firm, and was used by the firm in their business.

After the death of the testator, Sallie Colgate, with her children, remained in Europe until after the alleged agreement hereinafter mentioned. Charles Colgate, her father, assumed to consult on her behalf with the executors and surviving partners, but had no authority, and did not assume to bind her by his acts.

On the testator's death, the surviving partners continued the business of the firm to July 1st, 1865. Then, or as of that date, they closed the books of the firm, made an inventory of its assets, appraised the bills receivable as they thought best, the merchandise at what they thought was the market value, and the tools, fixtures, and furniture, and the leasehold property in New York, at the cost as they stood on the books of the firm, and also appraised or carried out the "Soap Factory" real estate at cost, as it stood upon the books. Thereupon, and before the will had been proven in either state, Samuel Colgate and William Richardson, named in the will as executors, upon consultation with Charles Colgate, the father of the widow, made an arrangement with Samuel Colgate and Charles C. Colgate, the surviving partners, by which the latter were to take the testator's interest in the partnership assets at the prices so fixed by themselves, and also his interest in the "Soap Factory" real estate, except that the tools and fixtures and real estate should be again appraised, and that they would pay any increased valuation. The tools, fixtures, &c., were afterwards appraised by David Taylor and William Taylor, his son, both of whom were then in the actual employment of the surviving partners, at $42,003. The leasehold property in New York was again appraised, by Messrs. Gilbert and Clayton, and the value thereof was increased $9,000. The surviving partners

thereupon took possession of the personal property, and sold and used the same in the continuation of their business.

Afterwards, in March, 1866, the soap factory real estate was appraised by David Smith and Benjamin F. Woolsey, selected by the firm and Mr. Richardson respectively, at $110,000. The valuations were made upon many of the lots separately, and in some cases the values of the lots and of the buildings thereon were ascertained separately. The arrangement for the sale of the real estate was never consummated by the payment of the price, or by the execution or delivery of deeds. The surviving partners, as tenants in common with the testator, have, however, continued in the possession thereof.

For the purpose of consummating this agreement for the sale of the real estate, about July 20th, 1866, a deed was sent to the widow, Sallie Colgate, to execute, but she refused to do so. After she had so refused, and in or after the year 1867, Samuel and Charles C. Colgate, the surviving tenants in common, removed some of the buildings, altered others, and erected new buildings upon the land, and made additions and improvements to the fixtures and tools. No effort was made to sell the interest of the testator in the partnership assets or in the real estate, to any other person.

It is claimed on the part of the defendant, Sallie Colgate, to have been established by the testimony that the value of the real estate was, at the time of the appraisement, greater than the appraised value, and that the same has since greatly increased in value.

Samuel Richardson, the other executor and trustee, Charles C. Colgate, the other partner, Bowles Colgate, admitted as a partner since the testator's death, Sallie Colgate, the widow, and Eugene Colgate, the surviving infant child of testator, are the defendants in the suit.

The first question is as to the right of the widow of Joseph Colgate, to dower in the undivided interest of her husband in the real estate. The devise of his real estate to trustees to pay her the income or a part of it, is not such devise as will

put her to her election under the sixteenth section of the dower act. This was decided in the Supreme Court in the case of *Vanarsdale* v. *Vanarsdale*, 2 *Dutcher* 404.

A more difficult question is that raised on this will, whether its provisions are not so inconsistent with her right to dower as to show that the testator intended the gifts to her as in lieu of dower. The authorities all agree, that if the provisions of the will are inconsistent with the dower of the wife in the real estate, the provision for her in the will shall be held as intended in lieu of dower, and she shall be put to her election.

The authorities and decisions in England differ as to what provisions in a will shall be held to be inconsistent with an estate in dower. They are cited and considered in 1 *Roper on Husband and Wife* 577. But the conflict in most of these cases depends upon questions that do not arise here, and the provisions held to be in lieu of dower are so different that the reasoning on which they were decided cannot be applied to this will.

In the case of *Chalmers* v. *Storil*, 2 *V. & B.* 222, decided by Sir William Grant, M. R., in 1813, the testator gave all his estates, real and personal, to his wife and two children, equally to be divided between them. In case of the death of both children in her life, he gave their share to her for life, and at her death he gave her share to the children. It was held that this disposition was inconsistent with her right of dower, and she was put to her election.

In the case of *Dickson* v. *Robinson*, *Jacob* 503, decided in 1822, Sir T. Plumer, M. R., held that a devise of all testator's real and personal estate to his wife, in trust for herself and her two daughters, was inconsistent with her claim for dower, and that she must elect.

In *Roberts* v. *Smith*, 1 *Sim. & Stu.* 513, Sir John Leach held that the provisions of a will that devised to the wife of the testator a messuage in fee, and devised all the rest of his estates, freehold and leasehold, to her and two other persons

in trust, to pay one-half of the income to her during her widowhood and the other half to the maintenance of his children, were inconsistent with the claim of dower and were intended to be in lieu of it.

Most of the conflicting cases are those in which an annuity was given to the wife less than the income of the estate, or charged on part of the estate, or where part of the real estate was devised to her for life or in fee.

In the case of *Ellis* v. *Lewis*, 3 *Hare* 310, the provisions of the will were substantially as those in Colgate's will. The testator devised all his real estate to a trustee, in trust to sell and invest the proceeds, and to pay the income arising from one moiety of it to his wife during widowhood, and to pay the income of the other moiety and of the whole after the death or re-marriage of his wife, to his sister. Sir James Wigram held that the devise should not be held inconsistent with and in lieu of dower, and that the widow was not put to her election. He notices the three cases above mentioned, and held that his determination did not conflict with them, supposing that these cases did not intend to overrule the doctrine well established, that a mere devise of lands in trust for sale did import an intention to devise it otherwise than in lieu of dower. He does not seem to have realized that the decision in those cases was based upon the fact that the disposition of the proceeds in part to herself, was inconsistent with her claim to dower, and showed an intention that this was in lieu of dower. He holds, without reference to authority, that the direction to divide the proceeds of the sale cannot decide what the subject of the sale is.

I am inclined to consider the judgment of Sir William Grant, Sir John Leach, and Sir. T. Plumer, as of more authority than that of Vice-Chancellor Wigram, standing as it does alone.

And in Colgate's will, the direction to collect the rents and income of the real estate until the sale, and to divide them in the same shares as directed as to the income of the proceeds,

seems to me more clearly inconsistent with the estate in dower, and more clearly to show that these provisions for the widow were intended by him in lieu of dower.

In the case of *Stark* v. *Hunton*, *Saxt.* 216, the will directed all testator's real and personal estate, excepting his tavern-house, to be sold and applied to the payment of his debts. The tavern-house he gave to his wife during widowhood. She married again and demanded dower. Chancellor Vroom held, without reference to the statute compelling election in such cases, that this devise must be held to be in lieu of dower, and that her acceptance barred dower. He says, after reviewing the English cases : " The policy of the great mass of the English cases appears to have been to save the dower of the widow if possible ; and for this purpose, numberless refinements and distinctions have been resorted to by the courts. Our policy, as manifested by our statute, is different." He holds that it is the settled rule at the present day, that express words of exclusion are not necessary in a will in order to bar dower ; it is sufficient that there is a manifest and unequivocal intention, so plain as to admit of no reasonable doubt, and that the provisions of that will manifested such intention.

In *White* v. *White*, 1 *Harr.* 202, the testator ordered that his wife should have one room in his dwelling-house, and a comfortable maintenance out of his real estate, during her widowhood, and gave all his lands and real estate to his two sons. The first plea to the count of the demandant was, that this provision for the widow was intended in bar of dower. The Supreme Court unanimously held that this provision for maintenance out of the real estate was inconsistent with and barred dower, and sustained the plea.

I cannot avoid the conclusion that by the law, as settled in England and in this state, the provisions for the widow in this will must, when accepted, bar her right to dower. And it is hardly possible to doubt that the testator intended that one-half of the income should be all that she should receive,.

and did not mean that she should, in addition, have one-third of the share given to his children.

In the state of New York the decisions in *Wood* v. *Wood*, 5 *Paige* 596, and *Lewis* v. *Smith*, 5 *Seld.* 502, seem to be inconsistent with the above conclusion. But the Court of Errors of that state, in the later case of *Savage* v. *Burnham*, 17 *N. Y. R.* 561, where the testator devised all his real estate in trust to sell at the death of his wife, and directed that she should, during her life, take and receive one-third of the clear yearly rents and profits thereof, held that this was inconsistent with her estate in dower, and that the widow was bound to elect.

The next question is whether the transaction or understanding between the complainant and Samuel Richardson, as trustees and executors under this will, on the one part, with such concurrence as was given by Sallie Colgate, through her father, Charles Colgate, and the complainant and Charles C. Colgate, the surviving partners, on the other part, with regard to the disposition of the interest of the testator in the real estate and in the assets of the firm, is an agreement of which specific performance can be denied by this court, or whether that understanding, in whole or as to any part of it, can be confirmed by this court.

The real estate in this case belonged to the partners as tenants in common, and the testator was seized of one equal undivided third part, and in that third the other partners had no interest. And as the personal effects of the firm were more than sufficient to pay its debts, the creditors of the firm could have no claim upon it.

The real estate is devised to the executors named, " or such of them as should prove the will," in trust, at such times as they should think proper, to sell it. When this understanding was had, neither of the three executors had proved the will, and the devise in trust had not taken effect, and no one had power to make such agreement. The complainant proved the will in New Jersey, June 8th, 1867, and neither of the

others has as yet proved it, or had letters testamentary. By the act concerning executors it is provided that where lands are devised to executors to be sold, and one or more shall neglect to prove the will, the trusts shall vest in the other executors or executor who shall prove the will. So that there has not been at any time, an executor or trustee who could convey this land to any person, except the complainant.

The rule is settled at law and in equity, and is not disputed, that an executor or trustee cannot, directly or indirectly, convey lands to himself, but such conveyance will be declared void as against the *cestuis que trust.* In this case, as the only bargain or contract as to the lands in this state was that made by the complainant with himself and his surviving partner, the agreement is not such a one as a court of equity will confirm, if it is opposed or contested by any of the *cestuis que trust;* much less will it decree a specific performance of it.

The title still remains in the complainant as trustee, and it remains in him as real estate, while he is bound to sell at such time as he may think proper; but when sold, the widow and surviving child are entitled to have it sold at the full value at the time of such sale, and to the rents of it until sold. The widow could consent to a sale as far as her right was concerned, but that is only a right to one-half of the income of the proceeds during her life. The infant defendant is entitled to one-half of the proceeds immediately, and to the principal of the other half at her death. The interest of the deceased child, as the land was not converted into money at the time of his death, nor directed so to be converted before that time, was real estate, and descended to his brother. No one has power to act for him. His mother is, by the will, appointed his guardian, but she cannot act as such until she has given security as guardian, and even then, without judicial sanction, she cannot convey his real estate or enter into any agreement or bargain that would affect it. Besides, there is not sufficient proof in this case to show that Mrs. Colgate did, at any time, assent to or acquiesce in this bargain as to the real estate.

The interest of the testator in the real estate may be sold by the complainant as trustee, but it must be for its present value. And when it is necessary that lands held in trust should be sold, and the trustee is in a situation that induces him to give more than any other purchaser would give, the court may authorize a sale by him, at a full, fair price, to be approved by the court, to himself, or to some one for his benefit. This was held in *Campbell.* v. *Walker,* 5 *Ves.* 678, and by the Supreme Court of the United States in *Michoud* v. *Girod,* 4 *How.* 503.

In this case, I am satisfied that the complainant and his copartners, who own the other two-thirds of this property, can afford to give the full market value of this real estate as it stands, undivided, better than any other purchaser, who must take it subject to the right of partition and sale; and it is equitable and just, if they are willing to give the full value, that the interest of the testator should be sold to them. It is a proper case for this court to order that a sale and conveyance should be made by the complainant to or in trust for the firm of which he is a member. And if the members of that firm agree or elect to purchase the property at its present value, it must be referred to a master to ascertain and report the present full, fair value of the real estate in which the testator, at his death, was seized of one-third; that value to be computed as if the same buildings and improvements were now upon it as were there at his death, and the value of buildings or improvements put upon it since his death not to be computed as part of the value. As, in the question of value, the infant has the greatest interest, and is not represented by any guardian of his person or estate, or by any counsel acting for him, and the interest of his mother in some matters conflicts with his, it is proper that these interests should be protected by some one, other than the guardian *ad litem,* who, in this case, is the clerk of the court, appointed *pro formâ,* only for the purpose of placing the infant within the jurisdiction of the court. The guardian *ad litem* must therefore be directed to employ proper counsel, approved by the court, to represent the infant in this

investigation, whose compensation, as well as the expenses necessarily incurred in the investigation, will be directed to be paid by the trustee out of the moneys of the infant in his hands. An account must also be taken of the rental value of this real estate as it existed at the death of the testator, one-third of which must be accounted for to the estate of the testator.

The personal property of the firm at the death of the testator did not survive to the surviving partners. One-third of it vested in the executors. The debts of the firm had first to be paid out of it, and for that purpose the surviving partners were entitled to collect debts due to the firm, and, if necessary, to sell its visible chattels; but of the residue, one-third vested in the executors. This they had power to sell and dispose of.

The business of this firm was in part in New York and in part in New Jersey, and the testator was a resident of New York, and his personal property must be administered and disposed of according to the law of his domicil, and by the executors who prove the will in that state, if they can obtain possession of it. Richardson proved the will in New York. One executor can sell and dispose of personal property, and he had power to sell the personal assets of the firm to a stranger; and if he disposed of them to a firm of which his co-executor was a member, this does not, *ipso facto*, if there is no fraud, make the sale void. That he and his co-executor disposed of the personal property to a firm so composed, would render the sale liable to be set aside in equity, both on account of fraud, and for any inadequacy of consideration.

In this case, Richardson and the complainant acting in New York, the place of the residence of the testator, and where the main business of the firm was carried on, terminated the partnership on the 1st of July, 1865. They had power to do this, and that termination of it is valid so far as to protect the firm from being liable to the estate for one-third of the profits since made, and protect the estate from one-third of the losses. The sale of the personal property

was made upon a valuation by fair and competent appraisers, for full value, and should be confirmed, so far as chattels in this state are concerned. The only effect of this decree will be to settle the title to those specific chattels, and the question whether they were sold for full value will still be open for consideration in the courts of New York, in which the executors must render their account.