Hutton's Executors v. Hutton.

BENJAMIN H. HUTTON'S EXECUTORS

*v.*

CHARLES GORDON HUTTON et al.

A testator, domiciled in New Jersey, provided in his will that whatever advances he might make in his lifetime to his son for the payment of the son's debts, not exceeding $200,000, would be found charged against him in an account kept by the testator, and should be deducted from the son's share. He also directed that those charges should, in no event, affect the portions of his other legatees. Those advances and charges amount to $120,000. The executors have filed a bill in this court, alleging that the son had applied to them for the balance ($80,000) of the $200,000, and praying directions as to their duties. The son, who resides in New York, where a large portion of the estate is, afterwards filed a petition with the surrogate of New York city against the executors, who also reside there, setting forth certain debts which he owes, and asking for an order that the executors pay him the $80,000 to satisfy those debts. The other legatees resisted that application, and it is still undetermined. They have also filed answers, and answers by way of cross-bill to the suit pending here, protesting against the proceedings before the New York surrogate.—*Held,* that as the domicile of the testator was here, and therefore the executors must account here, and as the amount of the residuum, from which the $80,000 must be paid, if at all, is not yet ascertained, and as the shares of the other legatees may be affected by the executors paying the son now, this court will enjoin the executors from paying any money out of the residuum until after its amount has been ascertained, and will also enjoin the son from proceeding in the foreign tribunal to enforce such payment.

On order to show cause why an injunction should not issue &c.

*Mr. F. Frelinghuysen* and *Mr. B. Williamson,* and *Mr. A. P. Whitehead,* of New York, for the order.

*Mr. S. M. Dickinson,* and *Mr. J. L. Cadwalader,* of New York, *contra,*

BIRD, V. C.

B. H. Hutton made his last will, to which he added several codicils. His estate was large. At the time of his death his domicile was in New Jersey, in which state he owned considerable real estate. He also owned real estate in New York and in France. But I infer that much the larger portion of his estate, in value, was personalty. His will was first proved in the state of New York in May, 1884, and in New Jersey in October of the same year. His executors resided in New York, and there a large portion of his personal estate was found.

His executors have considered it necessary to the proper settlement of the estate and to the distribution of the same under the will against the legatees, to file a bill in this court, asking for the construction of the will and codicils.

The testator left three children, one son and two daughters. One of the questions submitted is with reference to the rights of the son under the will. More particularly speaking, it is with reference to his rights to a portion of the residuum of the estate at this time. The will provided for the disposition of the residuum. In one of the codicils the testator said:

"Having, in my will, made provision for my son, and my son having prayed that I shall advance him out of his share a large sum of money to enable him to pay off certain debts, I have determined to advance to him and for his account such sum, not exceeding $200,000, for the purpose of paying his debts. Therefore, I modify subdivision four of article twelve, which relates to my son, as follows: I direct my executors to deduct from the forty per cent. bequeathed in said subdivision for the use of my said son and his heirs, such amount as shall be found charged on my books of account under the heading 'Charles Gordon Hutton, special account.' If, at the time of my death, all the debts of my said son shall not have been paid, and there shall be charged to him in said special account on my said books a sum less than

$200,000 (and not otherwise), I hereby direct my executors to deduct from said forty per cent. a sum which, when added to the amount so charged to my said son in said special account, shall not exceed, in the whole, the sum of $200,000, and to apply such sum to the payment of such of the said debts as may remain unliquidated, in such manner and proportion as my said son shall designate."

He also provided—

" In no event shall the sum so charged to my said son in my said books of account be deducted from or otherwise affect or impair the amounts provided and directed in and by my said will to my wife and my two daughters or any of the other legatees (besides my said son)."

The bill alleges that the complainants are informed and believe that there is sufficient real and personal estate to enable them to pay all the legacies contained in said will, including the provisions for the said son and his family.

The testator, in his lifetime, advanced to his son, of the $200,000 to be applied to the payment of his debts, $120,127, and caused the same to be entered and charged upon his books of account as a debit against his son, so that there remains of the $200,000 the sum of $79,873.

The bill alleges that the complainants have no special knowledge as to the amount of said debts which were then in existence, nor as to the amount now remaining due upon the same, nor as to the persons entitled to receive payment thereof, nor any of the facts which would enable them to make adequate and proper application to the payment of the said debts ; and it further alleges that they would willingly pay over the said sum of $79,873 in accordance with the directions of the said son, if they were not advised that there was a reasonable doubt as to the application of such payment, that is to say, whether or not all the creditors of the said son in existence when the said third codicil of the will was made, had not a vested interest in the said sum, subject to the discretion of the said son as to the manner of payment, and the proportion in which said payments should be made to the several creditors.   The bill also alleges that the complainants are ready to pay the income arising from the said forty per cent., and that they regard the provisions of the will in that re-

spect as compulsory, but that they also regard the provisions of the said fourth codicil, as set forth, as admitting of the construction that it may be their duty to apply the said sums to the maintenance of the said son and his wife and children. The complainants ask the court to adjudge whether they shall pay the said sum of $79,873, the remainder of the sum which they are authorized and directed to apply to the payment of the debts of the said son, in accordance with his directions, and if so, in what way they shall pay the same so as to free themselves from all liability; and if they be not so authorized to follow his directions, that they may be instructed in what way and to what extent they may apply the said sum to the payment of the said debts.

After the filing of this bill of complainants, which was filed January 5th, 1885, the said son applied to the executors for the payment of the said sum of $79,873, to be appropriated to the payment of his debts, which they declined to do. The son then filed his petition with the surrogate of the county of New York, in which he set forth the fact that $79,873 were still due him, and that there was a debt due from him in the sum of $14,000, and that judgment had been entered thereon against him for the sum of $15,970.96, and that it is one of the debts contemplated by the testator, and that the said son then and there designated. said debt to be paid in full, according to the provisions of said will and codicil, and prayed a decree against the said executors for the payment of said debt and judgment. The sisters, as residuary legatees, appeared and resisted all proceedings under said petition, before the said surrogate. The surrogate made a reference but has not yet finally disposed of the question involved.

The sisters filed their answer to the bill of complainants in this court. They also raise certain issues by way of cross-bill, respecting the proceedings before the said surrogate in the county of New York. They insist that no such proceedings should be had in a foreign tribunal, and more particularly so as no steps have been there taken to settle the estate and nothing there done except proving the will and filing an inventory. They insist that all questions involving the settlement of the estate should be had under the direction of this court. They likewise insist. that all payments of legacies and division of the residuum should

Hutton's Executors *v.* Hutton.

be made equally between them and the said son, in the propor-
tions directed by said will, and upon the terms and conditions
of said will and codicils, and that no preferences, as to time,
should be made in such payments. And as a reason for deter-
mining all such questions in this court, they show by their cross-
bill that the domicile of the said testator, at the time of his death,
was in New Jersey, and that said executors, as such ·executors
and trustees, must execute the said trust under the laws of this
state, and that for the faithful execution of their duties are thus
amenable to the laws of this state.

They ask by their cross-bill that the said executors be en-
joined from settling or disposing of the said estate except under
the directions of this court, and especially from paying any
money out of the residuary estate until such accounts are had as
will show whether there be any residuary estate or not, and
some approximation made to its amount. They also ask that the
said son be enjoined from taking any proceedings against the
said executors to compel the payment of any moneys out of the
residuary estate, and from prosecuting any further the proceedings
already taken before the surrogate of the county of New York.
One of their prayers is that the court may determine whether
any of the residuary estate should be disposed of until the whole
amount of such estate be ascertained.

The son answers the cross-bill, denying the principal allega-
tions which raise the disputed questions, admitting that the peti-
tion was filed by him with the surrogate of the county of New
York, and insisting that since so large an amount of the estate is
in New York, and the executors reside there, as well as himself,
complete justice can be done in New York only, and cannot be
done in New Jersey. The son, by answering, submits himself
to the jurisdiction of this court.

The question involved is not a contest between different tri-
bunals for the mastery, but one of principle. The surrogate of
the county of New York has justly recognized this fact in the
deference paid this court by awaiting the result of the inquiry
here.

The question at this stage, therefore, is, Will it be proper for

30

this court to restrain the executors from paying any portion of the supposed residue of the estate until the whole be ascertained, unless such payments are made in equal proportions to all those who are entitled thereto, and also to restrain the said son from proceeding in any foreign tribunal to enforce such payment?

It will be seen that the contest is not between creditors of the decedent, who are seeking to compel satisfaction of their claims by the aid of the courts in the country in which they reside and find assets of the testator, but between legatees on the one hand, and a legatee and the executors on the other.

In such case I think the law is well established. The testator had his domicile in New Jersey at the time of and for some years prior to his death. The court of the domicile is the forum to which the legatees under a will, or the parties entitled to the distribution of the estate of an intestate, are required to resort. *Enohin* v. *Wylie,* 10 H. L. Cas. 1; 8 Jur. (N. S.) 897; 31 L. J. (Ch.) 402; 10 W. R. 467; 6 L. T. (N. S.) 263; Maxwell v. Cartwright, L. R. (9 Ch. Div.) 173; Eng. Rep. (Moak) 10; Woodruff v. Schultz, 49 Iowa 430; Price v. Mace, 47 Wis. 23. See, also, a collection of authorities in 24 Eng. Rep. (Moak) 243; Leonard v. Putnam, 51 N. H. 247; Parsons v. Lyman, 20 N. Y. 103; Trimble v. Dzieduzyiki, 57 How. Pr. 208; 2 Williams on Exrs. *1301.

The question which underlies all others in this controversy pertains to the distribution of the residuum of this estate. The authorities, without exception, declare that such distribution is to be regulated by the law of the country in which the decedent was domiciled at the time of his death. But it is said that this rule of law is not infringed when a foreign tribunal entertains proceedings to make such distribution, provided the assets be distributed according to the law of the domicile of the decedent. To this extent the law may be very plain, but of that I do not decide, nor is it necessary that I should. The exact question involved is not in that direction. The assets to be distributed have not been ascertained, nor has the law of the domicile as yet been determined. It is not for me, nor for the foreign tribunal, to decide what the law of distribution of an intestate's assets is. I am to decide whether it will be proper to consent to the pay-

ment of a portion of the residuum of a testator's estate, in the interest and at the instance of one of the legatees, by a foreign court, before that residuum has been ascertained, and when the executors are in this court by their bill asking the court to tell them what the law in the premises is. It seems to me that in such case the opinions of the learned judges relied upon do not apply. Those cases can only be applied with safety when the law of the domicile is settled by statute, or, in the particular, by judicial decision. In this case that point has not been reached, and I most respectfully submit that no court can deal with these assets while this suit is pending, without the risk of violating the rule of law above cited, or of doing injustice to some of the parties interested. And, to avoid the force of this view, it is urged, with great confidence, that there is no necessity for this bill in equity, because no real questions are involved. But eminent counsel have thought differently. And on this point it is enough to say that while the bill is pending it should be regarded as a very important matter upon the question of distribution. Certainly, if it be so unnecessary the legatee, who claims under the will, and is a party, should show that fact to the court, and ask to have the bill dismissed before adopting independent proceedings to reach the assets, wherever they may be. The principle that a multiplicity of suits is to be avoided, when practicable, would have favored and sustained his asking the aid of this court, by petition, in this cause.

It is claimed by the learned counsel for the son that injunctions are not allowed in such cases, unless the ends of justice imperatively demand it. It is also claimed that a decree in the suit in this court will not cover the whole matter in dispute, and since that is so, no injunction should be granted. I was, at first, strongly inclined to think that the testator's wishes could be better complied with by refusing an injunction and allowing the son to proceed in the state of New York, since the testator had, in his lifetime, advanced over $120,000 towards the payment of his son's debts, and, to that extent, gave the son an advantage over the daughters; but, certainly, that cannot be my guide. The estate must be administered according to the directions of

the will, and the law; the latter would not permit the executors to favor the son by advancing to him at their own option, or his bidding, $79,873.50, without the payment of a proportionate amount to the daughters, simply because the testator had chosen in his lifetime a willingness to make advances to the son, nor does the will contemplate any such payment, but says—

"In no event shall the sum so charged to my said son, in my said books of account, be deducted from or otherwise affect or impair the amounts provided and directed in and by my said will, to go to my wife and my two daughters."

These facts and principles appearing, and two of the legatees calling upon the court to aid them in the protection of their rights, by forbidding the son to do what the executors do not call upon the court for aid in resisting his doing, that is, to have applied to his benefit the sum of $16,000, or without their having a proportionate amount paid to them, it seems to me that the case of injustice contemplated by the authorities cited has arisen, and that the court cannot withhold its hand; and that this is enough to warrant interference, whether every point in dispute is covered and can be settled by this suit or not.

I think it may well be said that an accidental issue or dispute, such as has been raised by the son in a sister state after the bill had been filed in this court, is not such subject-matter of dispute as should bar an injunction in a case like the present. He has created the issue voluntarily, upon which he now stands. That issue he could, with the utmost propriety, have raised in this court and in these proceedings. Most plainly there is not a fact, or circumstance, or equitable principle in his petition before the surrogate which he could not have presented, and had considered in this court under the proceedings instituted here by the executors, asking for a construction of the will with a view to the settlement of the estate. The executors saw fit to file their bill in the court of chancery of New Jersey, which was undoubtedly proper, since this was the domicile of the testator, and since all his personal estate, wherever situate, must be disposed of under the will according to the laws of this state. Had the son seen fit to follow the executors to this state, there is not a

doubt but that complete justice would have been done, not only as between him and his creditors, but also between him and his sisters. Therefore, it is not the consideration that the executors may be willing to pay, nor that there may be enough of the residuum to pay the amounts contemplated, nor that there is not the power in a foreign tribunal by some method to care for and protect its own citizens, either as legatees or creditors, but it is the consideration that injustice will, in this case, inevitably be done to the daughters by the inequality of the act in paying to the son or on his account, $16,000, or any other sum, without paying them a like proportion. In such case, there can be no equity except in perfect equality.

This last principle, that equality is equity, is so universal and controlling that neither this court nor any other can well allow the law to pursue this independent course at will, without extending the same privilege to the daughters or other legatees in the state of New York, or any other, or in any foreign country where a service could be effected and assets be found.

I cannot but think that the spirit of the foregoing views is fully sustained by the cases of *Dupuy* v. *Wurtz, 53 N. Y. 556; Knox* v. *Jones, 47 Id. 389; Wood* v. *Wood, 5 Paige 596; Bascom* v. *Albertson, 34 N. Y. 584.*

I will advise that the order to show cause why an injunction should not issue be made absolute.