WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—May, 1886.

HILL *v.* HORTON.

*In the matter of the application for the probate of a paper propounded as the will of* MARY HILL, *deceased.*

While the conduct of the committee of the person of a lunatic, in fixing the residence of the latter, is subject to judicial control, the act of the committee will, until such control is invoked or exercised, be deemed to be the act of the court, performed through its duly constituted agent.

Upon an application to the Surrogate's court of Westchester county for the probate of a will, it appeared that decedent, whose domicil of origin was in the county of Putnam, had removed to the former county and resided therein until 1872, when she returned to Putnam where she resided ten years; that, in 1882, she was adjudged a lunatic by the Putnam county court, and H., a resident of Westchester was appointed committee of her person; and that H. at once took the decedent to live with her at the home of the former, where she died in 1886.—

*Held,* that the legal residence of decedent, at the time of her death, was in Westchester county, and that the Surrogate's court thereof had jurisdiction to take proof of her will.

THE petition of Mary D. Horton and Abraham Hill, named as executors in a paper propounded as the will of decedent, bearing date November 7th, 1882, presented with a view to the proving of it, alleged, among other things, that, at the time of her death, she was a resident of Westchester county. On the return day of the citation, it was objected that the Surrogate of Westchester county had no jurisdiction to take proof of the will, for the reason that the

deceased was, at the time of her death, domiciled in the county of Putnam; that she was, in 1882 and for some time prior thereto, a resident of the town of Carmel in the latter county; that in July of the same year, in proceedings for that purpose, instituted in the county court of that county, she was declared to be of unsound mind and incompetent to manage her person and estate; whereupon James S. Anderson of the same county was duly appointed committee of her estate and Mary D. Horton, a resident of York-town, Westchester county, of her person.

It appeared that the latter at once took the decedent to live with her at Jefferson Valley, in said Yorktown, where she remained until her death, which occurred in April, 1886. Her domicil of origin was in Putnam county, but she afterwards removed into Westchester county, which is an adjoining county, where for a number of years she owned and resided on a farm. About the year 1872, she returned to the former county where she owned a small property, and where she resided at the time of the appointment of the committees.

A. RYDER, and E. WELLS, *for Solomon Hill, and others, heirs at law and next of kin:*

Cited People v. Com'rs of Taxes (100 *N. Y.*, 215); Matter of Ann Lynch (5 *Paige*, 120).

C. FROST, *for proponents:*

Cited Wood v. Wood (5 *Paige*, 596); Holyoke v. Haskins (5 *Pick.*, 26); Payne v. Town of Dunham (29 *Ill.*, 128); Anderson v. Anderson (42 *Vt.*, 350).

THE SURROGATE.—The precise question as to the

power of a committee, to change the residence or domicil of a lunatic committed to his charge, seems never to have been determined by any court of this state; but it was held by Chancellor WALWORTH, in Wood v. Wood (5 *Paige*, 596), that, in the case of guardian and ward, the former had a right to change the residence of the latter, even from one state to another, provided such change is made in good faith and with a view to his benefit, subject, however, to the power of the court to restrain an improper removal of an infant by his guardian, or even by his parent.

In the matter of Ann Lynch (*id.*, 120), cited by the contestants' counsel, and where the question affected a change of residence from one locality to another, apparently in the same city (New York), the Chancellor held that " the control which this court. may, by its committee, exercise over the person of one who is found incapable of conducting his own affairs, in consequence of habitual drunkenness, is the same which it may exercise over an infant, or an idiot, or a lunatic. The guardian or committee is alone to decide, subject, however, to the superintending control of the court, as to the proper place in which the infant, *non compos*, or habitual drunkard shall reside, as he is liable for the consequences of a neglect to take proper care of the person committed to his care and custody. And it is the duty of the court to lend its aid to protect him in the proper exercise of that right."

While this *dictum* does not fully cover the exact question here presented, as it was uttered in view of

the facts of that case, yet it recognizes the power which the committee had over the person of the habitual drunkard. Undoubtedly, the court may control the conduct of the committee in fixing the residence of the lunatic, or in any other respect, but until its power is invoked or exercised, the act of the committee will be deemed to be the act of the court, through its duly constituted agent. As has been seen, the court regarded the power of a committee of a lunatic, and of a guardian of a minor, to change and control the residence of the person *non compos*, or of the ward, as depending upon the same principle.

In Holyoke v. Haskins (5 *Pick.*, 20), it was held, in Massachusetts, that the domicil of an idiot may be changed by the direction or with the assent of his guardian. A like doctrine was held in the case of Cutts v. Haskins (9 *Mass.*, 543); and in Payne v. Town of Dunham (29 *Ill.*, 128). The case of Anderson v. Anderson (42 *Vt.*, 350) is very similar to this in its facts as well as in the question of jurisdiction, the law of that state providing for the settlement of the estate of a deceased person " in the probate district in which he shall have resided at the time of his death." Anderson, while residing in one probate district, became insane, and a guardian, called here a committee, was duly appointed, who afterwards removed the lunatic into another probate district of that state, where he died ; and the question arose as to which district was his residence at the time of his death. The court held it to be that where he died, declaring that " the right of the guardian to change the domicil of his insane ward is founded on obvious

reasons of humanity and justice, and supported by authority, citing the foregoing Massachusetts cases, and others.

In this State, § 2476 of the Code of Civil Procedure provides that the Surrogate's court of each county has jurisdiction, exclusive of every other Surrogate's court, to take the proof of a will, where the decedent was, at the time of his death, a resident of that county. If, therefore, the committee had power to change the place of residence of the lunatic from Putnam to Westchester county, there can remain no doubt as to the jurisdiction of this court.    That she had such power does not depend alone upon the cases already considered.    The Supreme court of the U. S., in Lamar v. Micou (112 *U. S.*, 471, 472), after citing approvingly Wood v. Wood, Cutts v. Haskins, Holyoke v. Haskins, Anderson v. Anderson (*supra*) and others, said that "any guardian, appointed in the state of the domicil of the ward, has been generally held to have the power of changing the ward's domicil from one county to another within the same state and under the same law."

There can be no doubt, therefore, that the legal residence of the decedent, at the time of her death, was in this county, and the objection to the jurisdiction of this court is overruled accordingly.