PUTNAM v. RUCH et al.

(Circuit Court, E. D. Louisiana. February 21, 1893.)

No. 12,169.

1. CONSTITUTIONAL LAW—CORPORATIONS—ANNULMENT OF CHARTER.
Article 258 of the Louisiana constitution of 1879, which in terms abolishes the "monopoly features" of existing corporations other than railroad companies, operated at once and of its own force, and, if sufficient, as applied to any particular corporation, to entirely annul its charter, that result was accomplished immediately without the doing of any act such as is necessary in case of a forfeiture for an act or omission by the corporation, and a stockholder could thereafter bring in his own name a suit to enjoin a wasting of the corporate property, and to wind up the affairs of the corporation and recover his share of the corporate assets.

2. SAME.
Articles 248 and 258 of the Louisiana constitution, providing for regulating the slaughter of cattle, and abolishing all monopoly features in the charter of any corporation existing in the state, did not entirely avoid and annul the charter of the Crescent City Live-Stock Landing & Slaughter-

house Company, whose charter gives it the exclusive right to slaughter cattle in New Orleans, but merely abolishes the monopoly feature thereof.

**3. CORPORATIONS—RIGHTS OF STOCKHOLDERS—BILL TO ENJOIN WASTE.**

A stockholder cannot maintain a bill to enjoin the wasting of corporate property unless the corporation itself refuses to bring the action, in which case it must be made a party defendant.

**4. SAME.**

A stockholder who brings a bill to enjoin waste of corporate property on the theory that the corporation has ceased to exist cannot make the corporation a party defendant, and if the corporation had been abolished this action would lie.

In Equity. Bill by Forest L. Putnam against Louis Ruch and others to have a receiver appointed, and for other relief touching property of the Crescent City Live-Stock Landing & Slaughterhouse Company, which plaintiff claimed had become extinct by constitutional provision. Heard on application for the appointment of a receiver and for an injunction pendente lite. Denied.

J. R. Beckwith, for complainant.

Rouse & Grant and Drolla & Augustin, for defendants.

BILLINGS, District Judge. This case has been heard upon an application for the appointment of a receiver, and for an injunction pendente lite on bill of complaint, exhibits, and numerous affidavits. The defendants are officers and stockholders of a corporation known as the Crescent City Live-Stock Landing & Slaughterhouse Company. The corporation has not been made a party to the suit. The questions presented in this case are almost purely legal. They are two: First, if articles 248 and 258 of the constitution of 1879 avoided and annulled the charter of the corporation, will this bill lie? and, second, did these articles annul the charter?

As to the first question: The bill of complaint is founded upon the now familiar doctrine that a charter of a corporation created by the legislature, which is embraced within the subject-matter of the public health or public morals, lacks an element of a contract, in that it is with reference to a thing over which legislatures lack power or authority to bind their successors, and is only continued at the will of the state, and may be abrogated at any time by either the legislature or the constitution, (Northwestern Fertilizing Co. v. Hyde Park, 97 U. S. 659,) although, where the charter is in terms recognized by the state constitution, it is beyond legislative repeal or recall, (New Orleans v. Houston, 119 U. S. 265, 7 Sup. Ct. Rep. 198.) The next proposition of the solicitor for the complainant cannot be controverted, and is that this recall may be express or by necessary implication. Upon this conceded law he stands, and next affirms that in case there has been a recall or repeal of the charter of the slaughterhouse company by the constitution of 1879, his bill of complaint will lie. A careful consideration of this question leads me to the conclusion that he is correct. Such an abrogation is not like the liability which a corporation incurs to forfeiture of its charter by reason of some act or omission of the corporation. The constitution is supreme, and, in respect to this matter, enforces and executes itself. Without the intervention of any instrumentality,

or the doing of any act, it immediately destroys and sweeps away the inconsistent charter to the extent of its inconsistencies.   But where a liability to a forfeiture of a charter has been incurred by a corporation, the corporation and its charter continue in existence till, at the instance of the state, either by a decree of a competent court or a legislative act, the forfeiture has been made operative to the extinction of the corporation.   If the corporation had become extinct, it seems to me this suit, which is that of a stockholder to recover his share of the corporation assets in the hands of the defendants, would clearly be maintainable. '

This brings me to the question, which is seriously debated, whether the article annulled the charter.   Act 118 of the acts of 1869 creates the corporation, and invests it with its powers and rights which are to be found in the 1st, 2d, and 3d sections, and are as follows:

"Section 1.  Be it enacted by the senate and house of representatives of the state of Louisiana in general assembly convened, that from and after the first day of June, A. D. (1869,) eighteen hundred and sixty-nine, it shall not be lawful to land, keep. or slaughter any cattle, beeves, calves, sheep, swine, or other animals, or to have, keep, or establish any stock landing, yards, pens, slaughterhouses, or abbatoirs at any point or place within the city of New Orleans or the parishes of Orleans, Jefferson, and St. Bernard, or at any point or place on the east bank of the Mississippi river, above the present depot of the New Orleans, Opelousas and Great Western Railroad Company, except that the 'Crescent City Stock-Landing and Slaughterhouse Company' may establish themselves at any point or place, as hereinafter provided. Any person or persons or corporation or company carrying on any business or doing any act in contravention of this act, or landing, slaughtering, or keeping any animal or animals in violation of this act, shall be liable to a fine of two hundred and fifty dollars ($250) for each and every violation, the same to be recoverable, with costs of suit, before any court of competent jurisdiction.    Sec. 2.   Be it further enacted," etc., "that Wm. D. Sanger, Joseph H. Pearson, J. R. Irwin, John Wharton, Franklin J. Pratt, R. T. Packwood, N. W. Travis, Henry V. Barringer, L. P. Sanger, W. S. Mudgett,. Oliver D. Russell, J. Viosca, S. P. Griffin, L. H. Crippen, Wm. McKenna, A. J. Oliver, F. G. Clark, and their successors, be and are hereby created a body politic and corporate to be known and designated. as the Crescent City Live-Stock Landing and Slaughterhouse Company, and by that name and style shall sue and be sued, purchase, hold, sell. contract, lease and release, grant and transfer, and may do all things necessary for the purposes hereinafter mentioned, and perform all other acts, and exercise and enjoy all other rights and privileges, incident to corporations, adopt and use a common seal, make, publish, and alter at pleasure by-laws, rules, and regulations for the government of the company or corporation and the carrying on of its business, shall determine and appoint their officers, and fix their compensation and term of office, and shall fix the amount of the capital stock of the said company or corporation and the number of shares thereof.   The domicile of the company or corporation shall be in the city of New Orleans, and the president shall be the proper officer on whom to serve citations, notices, and other legal process wherein this company or corporation may be interested.   Sec. 3.   Be it further enacted," etc., "that said company or corporation is hereby authorized to establish and erect at its own expense, at any point or place on the east bank of the Mississippi river within the parish of St. Bernard, or in the corporate limits of the city of New Orleans, below the United States barracks, or at any point or place on the west bank of the Mississippi river below the present depot of the New Orleans, Opelousas and Great Western Railroad Company, wharves, stables, sheds, yards, and buildings necessary to land, stable, shelter, protect, and preserve all kinds of horses, mules, cattle, and other animals, from and after the time such buildings, yards,

etc., are ready and complete for business, and notice thereof is given in the official journal of the state; and the said Crescent City Live-Stock Landing and Slaughterhouse Company shall have the sole and exclusive privilege of conducting and carrying on the live-stock landing and slaughhouse business within the limits and privileges granted by the provisions of this act, and cattle and other animals destined for sale or slaughter in the city of New Orleans or its environs shall be landed at the live-stock landing in the yards of said company, and shall be yarded, sheltered, and protected, if necessary, by said company or corporation; and said company or corporation shall be entitled to have and receive for each steamship landing at the wharves of the said company or corporation ten (10) dollars; for each steamboat or other water craft, five (5) dollars; and for each horse, mule, bull, ox, or cow landed at their wharves, for each and every day kept, ten (10) cents; for each and every hog, calf, sheep, or goat, for each and every day kept, five (5) cents, all without including the feed; and said company or corporation shall be entitled to keep and detain each and all of said animals until said charges are fully paid. But if the charges of landing, keeping, and feeding any of the aforesaid animals shall not be paid by the owners thereof after fifteen days of their being landed and placed in the custody of the said company or corporation, then the said company or corporation, in order to reimburse themselves for charges and expenses incurred, shall have power, by resorting to judicial proceedings, to advertise said animals for sale by auction in any two newspapers published in the city of New Orleans for five days, and after the expiration of said five days the said company or corporation may proceed to sell by auction, as advertised, the said animals, and the proceeds of said sale shall be taken by the said company or corporation, and applied to the payment of the charges and expenses aforesaid, and other additional costs, and the balance, if any, remaining from such sale, shall be held to the credit of and paid to the order or receipt of the owner of said animals. Any person or persons, firm or corporation, violating any of the provisions of this act, or interfering with the privileges herein granted, or landing, yarding, or keeping any animals in violation of the provisions of this act, or to the injury of said company or corporation, shall be liable to a fine or penalty of two hundred and fifty (250) dollars, to be recovered, with costs of suit, before any court of competent jurisdiction. The company shall, before the 1st of June, (1869,) eighteen hundred and sixty-nine, build and complete a grand slaughterhouse of sufficient capacity to accommodate all butchers, and in which to slaughter five hundred animals per day; also that a sufficient number of sheds and stables shall be erected before the date aforementioned to accommodate all the stock received at this port, all of which to be accomplished before the date fixed for the removal of the stock landing, as provided in the first section of this act, under penalty of a forfeiture of their charter."

## Articles 248 and 258 of the constitution of 1879 are as follows:

"Art. 248. The police juries of the several parishes, and the constituted authorities of all incorporated municipalities of the state, shall alone have the power of regulating the slaughtering of cattle and other live stock within their respective limits: provided, no monopoly or exclusive privilege shall exist in this state, nor such business be restricted to the land or houses of any individual or corporation: provided, the ordinances designating the places for slaughtering shall obtain the concurrence and approval of the board of health or other sanitary organization."

"Art. 258. All rights, actions, prosecutions, claims, and contracts, as well of individuals as of bodies corporate, and all laws in force at the time of the adoption of this constitution and not inconsistent therewith, shall continue as if the said constitution had not been adopted. But the monopoly features in the charter of any corporation now existing in the state, save such as may be contained in the charters of railroad companies, are hereby abolished."

It is seen that No. 118 of the acts of 1869 incorporates the slaughterhouse company, names the incorporators, gives it the right

to slaughter animals, build landings, etc., and, within certain territorial limits, makes this right exclusive. Section 10 limits the existence of the corporation to 25 years. Articles 248 and 258 give to the police juries and municipal authorities the authority to regulate the slaughtering of animals, provided, as to locality, the approval of the respective boards of health has been obtained, and abolishes all monopoly features and restrictions as to localities. The part of the charter which was abrogated was the exclusive right to slaughter, etc., within certain limits. There was also effected by means of the provisions of the new constitution above quoted, a subjection of the slaughterhouse company, along with all other persons and corporations engaged in slaughtering animals, in certain respects, to the parish and health authorities. This left the slaughterhouse company an existing corporation for the period prescribed by its charter, with all its corporate powers, minus its right to exclude any other person, and subject to the necessity, along with all others engaged in the same business, of having the approbation of the parish and health authorities in the location and the manner of conducting its business. There is no averment in the bill that the corporation has not the approval of the local authorities. The case is not a case of total repeal, as is the Case of Hyde Park. When the franchise of a corporation consists of a single faculty or right, and that faculty or right is of such a nature that it can rightfully be withdrawn by a constitutional provision, the adoption of a constitutional provision, irreconcilable with that faculty or right, would necessarily repeal the charter. When the franchise consists of several faculties or rights, some reconcilable and some irreconcilable with the constitutional provision, the repeal by implication calls for the same discrimination as would an express repeal where only specified parts are recalled. Only the irreconcilable faculties or rights are repealed or withdrawn, and the corporation with the faculties consistent with the new provision would survive. In a word, the new constitution still permits the slaughtering of animals, which was the business of the corporation, and only affects that business with conditions and limitations. This leaves the corporation and its business in existence shorn of its exclusiveness, and dependent upon the sanction of the local and health authorities.

There is another aspect of the bill which must be considered. There is a charge contained in it of threatened waste by the defendants. The theory of the bill is that no corporation exists. If the court assented to this view, the waste might be enjoined, and, of course, the corporation need not be made a party, for it would be a corporation no longer in existence; but since, in my view, the existence of the corporation, though in a shorn and restricted state, continues, if such an action could be maintainable, it would be in case the corporation refused to bring it, and the corporation would have to be a party defendant. Robinson v. Smith, 3 Paige, 222, 231, 232; Cunningham v. Pell, 5 Paige, 606, 612; Smith v. Hurd, 12 Metc. (Mass.) 371; Kendig v. Dean, 97 U. S. 423, 425. My conclusion, therefore, is that the application for the appointment of a receiver and for the injunction must be refused.